UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| DR. BRENT HULKE, Plaintiff, <br><br> v. <br><br> NORTH DAKOTA STATE UNIVERSITY; SHARI VEIL, in her official capacity as Provost; RICHARD HORSLEY, in his official capacity; HEATHER HIGGINS-DOCHTERMANN, in her official capacity; JOHN DOES 1–10, Defendants. | Case No. <br> **Complaint** <br><br><br> Jury Trial Demanded <br> Fed. R. Civ. P. 38(b) |

For his Complaint, Plaintiff Dr. Brent Hulke states and alleges as follows:

**I.   JURISDICTION AND VENUE**

1. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred within the District of North Dakota.

**II.   PARTIES**

5. Plaintiff Dr. Brent Hulke is a Research Geneticist employed by the United States Department of Agriculture, Agricultural Research Service ("USDA-ARS"). At all

1

relevant times, Plaintiff also held Adjunct Professor and/or Graduate Affiliate appointments at North Dakota State University ("NDSU").

6. Defendant NDSU is a public university and an instrumentality of the State of North Dakota.

7. Defendant Shari Veil is the Provost of NDSU and is sued in her official capacity for declaratory and injunctive relief.

8. Defendant Richard Horsley is the Head of the Department of Plant Sciences at NDSU and is sued in his official capacity.

9. Defendant Heather Higgins-Dochtermann is an administrator within NDSU's Equal Opportunity and Title IX Compliance Office and is sued in her individual capacity.

10. Defendants John Does 1–10 are additional university officials who participated in, approved, or ratified the unconstitutional conduct alleged herein. Their identities are presently unknown.

### III. FACTUAL ALLEGATIONS

#### A. Plaintiff's Faculty Status, Authority, and Reliance

11. Plaintiff held an Adjunct Professor position since 2008 and Graduate Affiliate appointments at NDSU since 2016.

12. These appointments were not honorary or symbolic. They conferred defined institutional authorities, including the right to co-advise graduate students, serve on Graduate Supervisory Committees, participate in departmental research, access

institutional computing and data resources, and act as a co-principal investigator on grants administered through NDSU.

13. NDSU repeatedly exercised control over Plaintiff's faculty role by approving graduate committee service, routing grant administration through the Department of Plant Sciences, granting access to institutional systems, and representing Plaintiff to students and third parties as faculty.

14. Plaintiff reasonably relied on these appointments in structuring his federally funded USDA-ARS research program, which depended on graduate student supervision, collaborative research with NDSU faculty, and access to NDSU-administered grants and facilities.

15. Defendants knew or should have known that termination of Plaintiff's faculty status would impair Plaintiff's ability to perform core functions of his federal employment as a USDA-ARS employee, subject to ethics restrictions to prevent conflict of interest between the positions.

16. USDA-ARS has recognized that this appointment is not symbolic and has conducted ethical reviews that approved what they consider an outside activity.

**B.   Governing Policies Creating a Protected Entitlement**

17. Plaintiff's Adjunct Professor and Graduate Affiliate appointments constituted "special appointments" governed by NDSU Policy 350.3, which expressly provides that "a faculty member whose special appointment is terminated" may request review and a hearing before the Standing Committee on Faculty Rights ("SCFR").

18. NDSU Policy 350.4 mandates the procedures for such hearings, including appointment of a hearing officer, exchange of evidence, witness testimony, cross-examination, findings based solely on the record, and a written decision by the University President.

19. These policies are mandatory, not discretionary. They do not exclude unpaid faculty, adjunct faculty, or faculty whose salary is paid by an external entity.

20. By promulgating and enforcing Policies 350.3 and 350.4, NDSU created a legitimate claim of entitlement to continued faculty status absent termination through the procedures specified therein.

C. **The February 6, 2024 Termination**

21. On February 6, 2024, Defendant Horsley issued a written notice stating that the Department of Plant Sciences had withdrawn its support for Plaintiff's Adjunct Professor and Graduate Affiliate appointments.

22. The letter stated that the decision followed a complaint reviewed by the NDSU Equal Opportunity and Title IX Compliance Office and that, based on the "findings of that review," it was no longer appropriate for Plaintiff to continue in roles involving students and staff. *See* **Exhibit A** to Complaint.

23. The letter imposed immediate and concrete sanctions, including removal of Plaintiff's authority to co-advise graduate students, removal from Graduate Supervisory Committees, termination of departmental management of grants and research accounts, and loss of access to institutional resources.

24. The letter did not identify any policy authority under which the action was taken, did not provide notice of allegations, did not disclose evidence, did not offer an opportunity to respond, and did not provide notice of any hearing or appeal rights.

25. The letter was copied to USDA-ARS officials, including Plaintiff's federal supervisors, thereby disseminating the stigmatizing basis for the action beyond NDSU.

26. Also, upon information and belief, NDSU discussed the matter at length with Dr. Hulke's co-advised students, some of whom are also federal employees, without his consent or knowledge.

**D. Improper Invocation of Title IX Without Title IX Process**

27. NDSU did not initiate or complete proceedings under NDSU Policy 156.1, which governs Title IX complaints and requires written notice of allegations, investigation, a live hearing with cross-examination, written findings, and appeal rights.

28. Plaintiff received none of the procedural protections required by Policy 156.1 or federal Title IX regulations.

29. Defendants nonetheless relied on purported Title IX "findings" to justify termination of Plaintiff's faculty status and to declare him unfit to work with students and staff.

30. Defendants' invocation of Title IX conclusions without Title IX process was knowing, intentional, and contrary to NDSU's own policies.

**E. Denial of Faculty Review and Hearing**

31. Within the time permitted by Policy 350.3, Plaintiff submitted a written request for review and a formal evidentiary hearing before the SCFR.

32. Plaintiff's request specifically alleged violations of Policies 350.3 and 350.4, improper reliance on Title IX without Title IX process, and deprivation of constitutional due process.

33. NDSU, through the Attorney General, denied the request, asserting that Plaintiff had never been employed by the university as a faculty member and was therefore not entitled to due process.

34. This assertion contradicted NDSU's own policies, prior conduct, and representations, and was advanced solely to avoid providing the process mandated by Policy 350.4.

35. Defendants did not identify any policy provision excluding Plaintiff from faculty status or from the protections of Policies 350.3 and 350.4.

### F. Stigma and Foreclosure of Professional Opportunities

36. By attributing Plaintiff's termination to Title IX findings and declaring him unfit to work with students and staff, Defendants imposed a stigma implying professional misconduct.

37. The stigma was coupled with tangible deprivations, including loss of faculty status, loss of grant administration, and loss of access to institutional resources.

38. These actions foreseeably impaired Plaintiff's federally funded research program, damaged his professional reputation within USDA-ARS and the broader academic community, and foreclosed future academic and research opportunities.

39. Plaintiff was denied any opportunity for a name-clearing hearing.

## IV.   CLAIMS FOR RELIEF

**COUNT I - Procedural Due Process — Deprivation of Property Interest (42 U.S.C. § 1983)**

40. Plaintiff incorporates all preceding paragraphs.

41. Policies 350.3 and 350.4 created a legitimate claim of entitlement to continued faculty status absent termination through the procedures specified therein.

42. Plaintiff possessed a protected property interest in his faculty status and the institutional authorities conferred by that status.

43. Defendants deprived Plaintiff of that property interest without notice, an opportunity to be heard, or a hearing before the SCFR.

44. Defendants acted under color of state law.

**COUNT II - Procedural Due Process — Stigma-Plus (42 U.S.C. § 1983)**

44. Plaintiff incorporates all preceding paragraphs.

45. Defendants publicly imposed stigma by attributing Plaintiff's termination to Title IX findings and declaring him unfit to work with students.

46. Defendants coupled that stigma with tangible professional deprivations that foreclosed Plaintiff's freedom to pursue his profession.

47. Plaintiff was denied a name-clearing hearing in violation of the Fourteenth Amendment.

**COUNT III - Substantive Due Process — (42 U.S.C. § 1983)**

48. Plaintiff incorporates all preceding paragraphs.

49. Defendants invoked Title IX conclusions while denying Title IX procedures and simultaneously denied faculty review by retroactively disclaiming Plaintiff's faculty status.

50. This conduct was irrational, internally inconsistent, and undertaken for the purpose of avoiding mandated procedural protections.

51. Defendants' actions shock the conscience and violate substantive due process.

## COUNT IV - Declaratory and Injunctive Relief

52. An actual and ongoing controversy exists regarding Plaintiff's rights under the Constitution and NDSU policies.

53. Plaintiff seeks declaratory relief and prospective injunctive relief restoring lawful process, including a name-clearing hearing and faculty review hearing.

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Declare Defendants' actions unconstitutional;

2. Enjoin enforcement of the February 6, 2026 termination absent lawful process;

3. Order a name-clearing hearing;

4. Award attorney's fees pursuant to 42 U.S.C. § 1988; and

5. Grant such other relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date: March 10, 2026

                                              **RINGSTROM DEKREY PLLP**

*/s/ Jeffrey P. Sprout*
Jeffrey P. Sprout (ND #08770)
814 Center Ave., Ste. 5
Moorhead, MN 56560
P: (218) 284-0484
jeff@ringstromdekrey.com
*Attorneys for Plaintiff*