UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Dr. Brent Hulke,<br><br>     Plaintiff,<br><br> vs.<br><br>North Dakota State University, et al.,<br><br>     Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**Case No. 3:26-cv-00068** |

## INTRODUCTION

[¶1] Plaintiff Dr. Brent Hulke ("Plaintiff") filed an Amended Complaint initiating this action alleging a violation of procedural and substantive due process related to a letter he received on February 6, 2026, from then-Head of the Department of Plant Sciences, Defendant Richard Horsley ("Horsley"), addressing Plaintiff's Graduate Affiliate Status and Adjunct Status at North Dakota State University ("NDSU"). Doc. No. 6. Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). Doc. No. 9-2. While Plaintiff does not specifically articulate the details or scope of the injunction sought in his Motion, as best as Defendants can infer the details of such relief based on the arguments asserted, Plaintiff asks this Court to: 1) enjoin the Defendants from moving forward with a "termination" of Plaintiff's graduate affiliate status and adjunct status and 2) order the Defendants to provide Plaintiff with a hearing process relative to the proposed actions in the February 6, 2026, letter. Plaintiff's request for injunctive relief is moot for the reasons set forth below. Defendants' respectfully request the Court deny Plaintiff's Motion.

## BRIEF FACTUAL BACKGROUND

[¶2] The facts relevant to the Motion before this Court are straightforward and brief. Plaintiff is an employee of the United States Department of Agriculture ("USDA"), Agricultural Research Service. Doc. No. 9-1 at ¶ 2. Plaintiff has previously been an adjunct professor at NDSU and has graduate affiliate status there. The Defendants received a complaint on October 17, 2025, which was reviewed by the NDSU Equal Opportunity and Title IX Compliance Office. As a result of the

complaint, Defendant Heather Higgins-Dochtermann conducted interviews relevant to the complaint to gather information and determine appropriate next steps. On February 6, 2026, Horsley provided a letter to Plaintiff regarding a "Notice of Termination of *Support* for Graduate Affiliate Status and Adjunct Status" ("Notice"). Doc. No. 1-2 (emphasis added). The Notice informed Plaintiff that "the Department of Plant Sciences has notified Dean Lee of the Graduate School and Provost Veil that we have *withdrawn our support* for your Graduate Affiliate Status and Adjunct Status at NDSU, respectively." *Id*. (emphasis added). The Notice stated that support was withdrawn based on the findings of a review completed by the NDSU Equal Opportunity and Title IX Compliance Office. *Id*. The Notice went on to inform Plaintiff he "will no longer be eligible to co-advise Plant Sciences graduate students or to serve on their Graduate Supervisory Committees" and the Department of Plant Sciences would no longer manage existing grants in which Plaintiff was a co-Principal Investigator. The Notice did not purport to be a final determination, but rather was communicating a withdrawal of support to the Dean of the Graduate School and Provost Veil. The Notice did not expressly terminate Plaintiff's Adjunct Faculty status or Graduate Affiliate Status.

[¶3]   On March 11, 2026, Plaintiff filed his Complaint alleging a violation of his substantive and procedural due process rights with respect to the Notice requesting the Court order NDSU to provide a name-clearing hearing, enjoin enforcement of the February 6, 2026 "termination" absent lawful process, and to declare the Defendants' actions to be unconstitutional.

[¶4]   On April 21, 2026, the Defendants offered Plaintiff the opportunity to sit for an interview concerning the allegations in the complaint prior to the Dean of the Graduate School and Provost Veil issuing a final decision with regards to the matter raised in the Notice from Horsley. On May 21, 2026, Plaintiff, through counsel, declined to be interviewed; as an employee of the USDA, Plaintiff had not received approval to participate in the interview. After Plaintiff declined to be interviewed in furtherance of the investigation, interim Dean Joel Hektner ("Dean Hektner") issued a final written decision on June 5, 2026 ("Final Decision"). Ex. 1. The Final Decision communicated to Plaintiff that his "affiliate status and adjunct faculty status remain in effect." *Id*.

2

Concerning Plaintiff's Graduate Affiliate Status, Dean Hektner determined that Plaintiff would be required to complete NDSU's Equal Opportunity training by June 30, 2026, and upon completion he could continue to serve on graduate committees and co-advise graduate students consistent with applicable Graduate School policies and procedures. *Id*. Plaintiff was also notified of his right to file a grievance if he disagreed with Dean Hektner's decision pursuant to NDSU Policy Section 353. Ex. 2.

## LAW AND ARGUMENT

[¶5]    Hulke seeks a temporary restraining order and preliminary injunction, interchangeably referencing both in his briefing (Doc. No. 9-2 at 2, 3, 8), but he only cites to Rule 65(b) of the Federal Rules of Civil Procedure. Doc. No. 9-2 at 3, 8. Temporary restraining orders are governed by Rule 65(a) and require the Court to analyze the factors set forth in Rule 65(a)(3): "[t]he court may issue a temporary restraining order *only* if it finds . . . ." Fed. R. Civ.P. 65(a)(3) (emphasis added). Plaintiff's briefing does not address those specific factors, but rather focuses on the factors announced in *Dataphase Systems, Inc. v. C L Systems, Inc.*, which only addresses the factors for whether a preliminary injunction should issue, not a temporary restraining order. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Therefore, the Defendants will brief the issue of whether a preliminary injunction should be issued; it should not.

## I.    Law Governing Preliminary Injunctions.

[¶6]    "A preliminary injunction is an extraordinary remedy never awarded as of right. The movant must show the preliminary injunction is warranted." *Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022) (citations omitted). It is the Plaintiff's burden to establish four factors for a preliminary injunction to issue: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id*. "When deciding whether to grant a preliminary injunction, courts ask whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Kansas v. United States*, No. 1:24-CV-

00150, 2024 WL 5220178, at *6 (D.N.D. Dec. 9, 2024) (internal quotations omitted), *opinion clarified*, No. 1:24-CV-00150, 2025 WL 1483469 (D.N.D. Jan. 15, 2025), and *appeal dismissed,* No. 24-3532, 2025 WL 1502436 (8th Cir. Jan. 16, 2025), and *appeal dismissed,* No. 24-3521, 2025 WL 3733895 (8th Cir. Oct. 1, 2025).

[¶7]     The need for injunctive relief can become moot "if the injunctive relief sought would no longer have any meaning for the party seeking it." *Turning Point USA at Arkansas State Univ. v. Rhodes*, 409 F. Supp. 3d 677, 684 (E.D. Ark. 2019), *aff'd*, 973 F.3d 868 (8th Cir. 2020) ("Turning Point USA"). The dispute in question "must not call for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Id*; *see also McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992) ("In order for a federal court to hear a case, there must be a definite and concrete controversy involving adverse legal interests *at every stage* in the litigation.") (emphasis added). Disputes may become moot where a law has been amended or repealed as in *Turning Point USA* or where "[t]hrough the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief." *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992) (appeal of district court's denial of preliminary injunctive relief relating to participation in a high school extra-curricular activity held moot where student had graduated from school and no remedy could be provided). Mootness has been found to occur where the relief requested on appeal is actually received by the Plaintiff prior to a decision, and that is the case here. *See Flittie v. Erickson*, 724 F.2d 80, 81 (8th Cir. 1983). This Court should deny Plaintiff's Motion because a controversy does not exist and the relief sought in the Motion is moot.

## II.     The Final Decision Moots Plaintiff's Request for Preliminary Injunctive Relief and the Court should deny the Motion.

[¶8]     Plaintiff's request and alleged need for a preliminary injunction is mooted by the Final Decision issued by Defendants. While Plaintiff characterized the Notice as "not temporary, investigatory, or precautionary" (Doc. No. 9-2 at 1) and "final in effect" (*Id*.) its plain language militates against this characterization as well as the resulting Final Decision issued by Dean Hektner. A preliminary injunction was sought, again as best Defendants can parse, to enjoin the

4

Defendants from enforcing the recommendation made by Horsley to the Dean of the Graduate School and Provost Veil without a hearing or "lawful process". Doc. No. 6 at 8. But the Final Decision did not accept and implement Horsley's recommendation. The Final Decision identified that Plaintiff would continue in his Adjunct Faculty role, without any additional encumbrance. It also allowed Plaintiff to continue in his Graduate Affiliate Status, but required he complete training to co-advise students and serve on graduate committees. The relief sought through a preliminary injunction, that the Defendants not enforce the Notice, would not be effective or have any meaning for Plaintiff.

[¶9] The need for injunctive relief is further militated against by the grievance process Plaintiff has the ability to utilize, should he disagree with the Final Decision. Specifically, Policy 353 provides for an informal process of resolution through discussion first with the administrator whose decision is the subject of the grievance and escalation to the respondent's immediate supervisor if the initial discussion does not achieve a satisfactory result. Ex. 2 at 1. The policy further provides for appeal to a Special Review Committee by filing a written grievance no later than 120 calendar days from the date the grievant was notified on the grievable issue and allows for a hearing. *Id*. To the extent Plaintiff sought injunctive relief to order the Defendants to offer a "lawful process" or "[o]rder a name-clearing hearing" Plaintiff has the right to exercise the opportunity to respond, was already offered such an opportunity through an interview he declined, and has the right to request a hearing.

[¶10] Last, holding the preliminary injunction as moot under these circumstances is in line with an analogous case of *Flittie v. Erickson*, 724 F.2d 80 (8th Cir. 1983). In *Flittie*, an inmate of the South Dakota State Penitentiary claimed he was deprived of a meaningful hearing for parole when one of the decisionmakers had previously prosecuted the inmate. *Id*. at 81. The district court granted the defendants' motion for summary judgment and the inmate appealed seeking declaratory relief "granting a hearing before a fair and impartial board and injunctive relief ordering the board to reconsider his application . . . ." *Id*. During the pendency of his appeal, the inmate was eligible for another parole hearing; during the second hearing the decisionmaker from

the first parole hearing did not participate. *Id*. The Eighth Circuit held because the inmate received the specific relief he had requested, his claims for declaratory and injunctive relief were moot explaining there no longer existed a substantial controversy. *Id*. While in the context of a parole hearing, *Flittie* is analogous because Plaintiff, like Flittie, has already received the relief sought from a preliminary injunction – i.e., a Court order directing Defendants not to implement the recommendations made in the Notice without lawful process and ordering them to hold a hearing. Plaintiff was offered an opportunity to be interviewed and respond to any allegations prior to a final determination being issued but he declined. The Notice provided a recommendation that ultimately was not followed by Dean Hektner as evidenced in the Final Decision. If Plaintiff desires a hearing on the Final Decision, which would reach the underlying merits of the information gathered in the complaint that resulted in the requirement to complete training, he can request one in line with the grievance policy and thus has the right to a hearing as he seeks through injunctive relief.

### CONCLUSION

[¶11]   The factual developments that have taken place since Plaintiff filed his Motion have removed any controversy requiring Court intervention. Based on these development, the Court would be doing no more than issuing an advisory opinion which violates Article III requirements. Plaintiff's request for injunctive relief is moot and the Motion should be denied.

Dated this 8th day of June, 2026.

State of North Dakota
Drew H. Wrigley
Attorney General


By:      /s/  Courtney R. Titus
Courtney R. Titus
Assistant Attorney General
State Bar ID No. 08810
Office of Attorney General
500 North 9th Street
Bismarck, ND  58501-4509
Telephone (701) 328-3640
Email ctitus@nd.gov

Attorneys for Defendants.