**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | |
|---|---|
| Dr. Brent Hulke,<br><br>                    Plaintiff,<br><br>     vs.<br><br>North Dakota State University, et al.,<br><br>                    Defendants. | **ORDER**<br><br>Case No. 3:26-cv-68 |

Plaintiff Dr. Brent Hulke moves for a temporary restraining order ("TRO") and preliminary injunction enjoining Defendants North Dakota State University, Shari Veil, Richard Horsley, Heather Higgins-Dochtermann, and John Does 1-10 (collectively, "NDSU") from enforcing Dr. Hulke's alleged termination from North Dakota State University. Docs. 9; 10. NDSU responded, arguing that Dr. Hulke's request for injunctive relief is moot. Doc. 20. Dr. Hulke did not reply.

I.    **BACKGROUND**

Dr. Hulke is a geneticist employed by the United States Department of Agriculture ("USDA"). Doc. 9-1, p. 1. Since 2008, Dr. Hulke has held adjunct professor and graduate affiliate appointments at NDSU. Id. In October 2025, NDSU received a complaint reviewed by the NDSU Equal Opportunity and Title IX Compliance Office. Doc. 20 at 1-2. Defendant Heather Higgins-Dochtermann conducted interviews to gather information relevant to the complaint. Id.

In February 2026, Dr. Hulke received a "Notice of Termination of Support for Graduate Affiliate Status and Adjunct Status" (the "Notice"). Doc. 1-2. The Notice stated that "the Department of Plant Sciences has notified Dean Lee of the Graduate School and Provost Veil that we have withdrawn our support for your Graduate Affiliate Status and Adjunct Status at NDSU, respectively." Id. The Notice stated that support was withdrawn based on the findings of a review

completed by the NDSU Equal Opportunity Office. Id. It further indicated that Dr. Hulke would "no longer be eligible to co-advise Plant Sciences graduate students or to serve on their Graduate Supervisory Committees" and the Department of Plant Sciences would no longer manage existing grants in which Dr. Hulke was a co-Principal Investigator. Doc. 1-2.

On March 11, 2026, Dr. Hulke filed a complaint alleging a violation of his substantive and procedural due process rights. Doc. 1. He requests, among other things, that the Court "Declare Defendants' actions unconstitutional," "Enjoin enforcement of the February 6, 2026 termination absent lawful process," and "Order a name-clearing hearing." Doc. 1 at 8. On March 31, 2026, Dr. Hulke filed two motions for injunctive relief. Docs. 9; 10. His motions seek to enjoin "Defendants from enforcing the February 6, 2026 termination of Plaintiff's faculty status and associated institutional authorities, and requiring Defendants to restore the status quo pending final adjudication of this action." Doc. 9.

Several factual developments have occurred since then. First, in April 2026, NDSU offered Dr. Hulke the opportunity to sit for an interview concerning the allegations before a final decision was made. Doc. 20 at 2. Dr. Hulke declined to be interviewed; as an employee of the USDA, Dr. Hulke had not received approval to participate in the interview. Id. Second, Dean Joel Hektner issued a final written decision on June 5, 2026 (the "Final Decision"). Doc. 21-1, p. 2. The Final Decision stated that Dr. Hulke's "affiliate status and adjunct faculty status remain in effect." Id. Concerning Dr. Hulke's Graduate Affiliate Status, Dean Hektner determined that Dr. Hulke would be required to complete NDSU's Equal Opportunity training by June 30, 2026, and upon completion he could continue to serve on graduate committees and co-advise graduate students. Id. Dr. Hulke was also notified of his right to file a grievance if he disagreed with the decision. Id.

2

## II.     LAW AND DISCUSSION

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of TROs and preliminary injunctions. When considering a motion for a TRO or preliminary injunction, the Court weighs the four factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc): "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 114; see also Tumey v. Mycroft AI, Inc., 27 F.4th 657, 665 (8th Cir. 2022) (recognizing that the standard for analyzing a motion for TRO is the same as the standard for analyzing a motion for preliminary injunction).

While no single factor is dispositive, the Eighth Circuit has instructed that "[t]he two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that the plaintiff will succeed on the merits and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." Chicago Stadium Corp. v. Scallen, 530 F.2d 204, 206 (8th Cir. 1976). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). The burden to demonstrate the necessity of a preliminary injunction rests with the movant. See General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

Here, it is not necessary to address the Dataphase factors because Dr. Hulke's request for injunctive relief was mooted by factual developments that occurred in April 2026. "In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." Republican Party of Minn., Third Cong. Dist. V. Klobuchar, 381 F.3d 785, 789-90 (8th Cir. 2004) (quoting Iron Cloud v.

3

Sullivan, 984 F.2d 241, 242 (8th Cir. 1993)); see also Ringo v. Lombardi, 677 F.3d 793, 796 (8th Cir. 2012) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy."). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Ringo, 677 F.3d at 796. "'When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot' and cannot be heard by a court." Life Inv. Ins. Co. of Am. V. Fed. City Region, Inc., 687 F.3d 1117, 1121 (8th Cir. 2012).

Dr. Hulke requests that the Court issue a preliminary injunction enjoining NDSU from "enforcing the . . . termination of Plaintiff's faculty status and associated institutional authorities, and requiring Defendants to restore the status quo pending final adjudication of this action." Doc. 9. But the record demonstrates that as of June 5, 2026, Dr. Hulke's "affiliate status and adjunct faculty status remain in effect." Doc. 21-1 at 2. As for Dr. Hulke's graduate status, the Final Decision stated he "may continue to serve" in this role after completing training. Id. More, the Final Decision informed Dr. Hulke of his right to file a grievance if he disagreed with the determination. Id. Because of this change in circumstances, the Court finds that the relief Hulke seeks in his motions has already occurred. Dr. Hulke's faculty and affiliate status have not been terminated. His graduate status would remain in effect upon completion of training. Dr. Hulke has not filed a reply or argued that this is not the case. Thus, the Court can no longer grant injunctive relief to Hulke, and his motions for TRO and preliminary injunction (Docs. 9; 10) are denied as moot.

III.    **CONCLUSION**

After a careful review of the record, Dr. Hulke's motions for a TRO (Doc. 9) and preliminary injunction (Doc. 10) are **MOOT**.

**IT IS SO ORDERED.**

Dated this 5th day of August, 2026.

/s/ *Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court